UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:24-cr-406 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CHRISTIN SHAMAR SMITH, | ) | **AND ORDER** |
| | ) | |
| DEFENDANT. | ) | |

Defendant Christin Shamar Smith ("Smith") moves *in limine* to exclude certain drug evidence at his upcoming trial. (Doc. No. 21.) The United States opposes Smith's motion. (Doc. No. 25.) Smith filed a reply. (Doc. No. 26.) For the reasons discussed below, the motion is **DENIED**.

**I.  BACKGROUND**

On July 27, 2024, Ohio State Highway Patrol Trooper Boyer ("Trooper Boyer") observed a vehicle with "extremely dark window tint and no visible license plate" driving on 17th Street NE in Canton, Ohio. (Doc. No. 25, at 1.) When Trooper Boyer turned to follow the vehicle down Shriver Avenue, it "quickly accelerate[d] as if attempting to flee[.]" (*Id.*) After Trooper Boyer "activated his overhead lights and sirens" the vehicle "disregard[ed] two consecutive stop signs" before coming to a stop "near 14th Street NE." (*Id.*) Two male occupants fled. (*Id.*) Trooper Boyer observed the first occupant—who was carrying a backpack—run through nearby backyards and "jump over a residential fence" before losing sight of him. (*Id.* at 1–2.)

After apprehending the second vehicle occupant, Trooper Boyer (and by this point, another officer) resumed the search for the first man. (*Id.* at 2.) During that search, the officers located a

backpack under the back porch of a residence on 14th Street NE. (*Id.*) The backpack contained drugs and drug paraphernalia (fentanyl, MDMA, and two digital scales), a firearm (a Glock Model 37), and a wallet with an Ohio identification card for Christin Smith. (*Id.* at 2, 6.) Trooper Boyer recognized Smith as the same man he had seen earlier carrying the backpack and jumping over the fence. (*Id.* at 2.) Eventually Smith was arrested, and a grand jury indicted him with one count of being a felon in possession of a firearm and ammunition. (Doc. No. 10 (Indictment), at 1.)

## II.    MOTION *IN LIMINE*

Although not explicitly authorized by the Federal Rules of Evidence or the Federal Rules of Criminal Procedure, the practice of ruling on motions *in limine* "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). Motions *in limine* allow the court to rule on evidentiary issues before trial in order to avoid delay and to allow parties to focus their time on issues that will be considered by the jury. *See United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). Further, *in limine* rulings are preliminary, and the district court may change its ruling at trial for any reason it deems appropriate. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citation omitted).

Smith makes two arguments to exclude evidence of the drugs found in the backpack. (Doc. No. 21, at 3.)[1] First, he argues that the drug evidence should be excluded under Federal Rule of Evidence 404(b) because it is "not relevant to any elements of the charge in this case" and would be used only "to attempt to show [his] alleged propensities." (*Id.* at 3.) Second, he contends that the drugs should be excluded under Rule 403 because the "danger that a jury would convict [him]

---

[1] Originally, Smith's motion *in limine* sought the exclusion of three types of evidence. (Doc. No. 21, at 1.) The United States agreed not to introduce one type of evidence (Doc. No. 25, at 5), and Smith withdrew the portion of his motion concerning another. (Doc. No. 26, at 2.) Only the drug evidence remains in dispute.

2

based on other allegations of his wrongdoing substantially outweighs any minimal probative value" the drug evidence might have. (*Id.*) The United States argues that the drugs are admissible *res gestae* evidence because they "are part of the same events as the charged offense and [are] directly probative." (Doc. No. 25, at 6.) The Court addresses each argument in turn.

### A. *Res Gestae* Evidence

Generally, Rule 404(b) precludes the admission of propensity evidence, that is "[e]vidence of any other crime, wrong, or act" used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The Sixth Circuit, however, has recognized that *res gestae* or background evidence does not implicate Rule 404(b)'s prohibition. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000).[2]

Proper *res gestae* evidence must be "inextricably intertwined with the charged offense" and have "a causal, temporal or spatial connection with the charged offense." *Id.* (citation omitted). That includes evidence that is "a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* The *res gestae* doctrine recognizes that "defendants are not entitled to a sanitized recounting of the facts" and "permits the government to put [] charges in the appropriate context[.]" *United States v. Peete*, 781 F. App'x 427, 433 (6th Cir. 2019) (cleaned up).

Here, the drug evidence is "directly probative of the charged offense[.]" *Hardy*, 228 F.3d

---

[2] The United States refers to the disputed evidence as both "res gestae" and "intrinsic acts[.]" (Doc. No. 25, at 4.) The Sixth Circuit has "acknowledged that the distinctions among res gestae, inextricably intertwined evidence, intrinsic evidence, and background evidence are far from clear." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (alterations omitted); *see United States v. Sadler*, 24 F.4th 515, 554 (6th Cir. 2022) ("A similar but distinct doctrine involves an exception to Rule 404(b) for *res gestae*, or background, evidence."). Based on the Court's review of the United States' motion, it appears that the disputed evidence is best described as *res gestae*. In any event, the Sixth Circuit treats the concepts similarly, so any distinction between them would not affect the outcome here. *Churn*, 800 F.3d at 779.

at 748. The Sixth Circuit has repeatedly recognized a probative link between possessing drugs and possessing a firearm. In *United States v. Till*, for example, the defendant was charged with being a felon in possession of a weapon after police located a handgun in a car in which he was a passenger. 434 F.3d 880, 882 (6th Cir. 2006). Officers also located marijuana in the glove compartment of the car and cocaine on the defendant's person. *Id.* The district court admitted testimony about the drugs as *res gestae* evidence. *Id.* at 884. On appeal, the defendant argued that the "narrative of the firearm seizure could readily have been told" without the drug evidence. *Id.* at 883 (quotation marks omitted). The Sixth Circuit rejected that argument and concluded that the drug evidence was admissible as *res gestate* because it was "directly probative of [the] defendant's knowing possession of the firearm[.]" *Id.* at 884; *United States v. Rhodes*, 314 F. App'x 790, 793–94 (6th Cir. 2008) (finding drug evidence to be probative in felon-in-possession case and collecting cases); *United States v. McGlown*, 150 F. App'x 462, 470 (6th Cir. 2005) ("Defendant's possession of powder cocaine . . . has some probative value in establishing possession of a firearm."); *United States v. Shanklin*, No. 3:16-cr-85, 2017 WL 1424302, at *2 (W.D. Ky. Apr. 20, 2017) (finding drug paraphernalia to be "'directly probative of the charged offense' of firearm possession" and admissible as *res gestae* evidence in felon-in-possession case (quoting *Rhodes*, 314 F. App'x at 793)); *United States v. Williamson*, 315 F. App'x 734, 737 (10th Cir. 2009) (admitting drug evidence found in defendant's backpack along with firearm as *res gestate* in felon-in-possession case); *United States v. Butcher*, 926 F.2d 811, 816 (9th Cir. 1991) ("[T]he presence of the weapons in the house, and methamphetamines and paraphernalia used in the sale of this drug, was inextricably intertwined with the possession of the firearm found in the truck."). Much the same here, the parties dispute whether Smith possessed a firearm. A jury may find the drug evidence directly probative of that issue.

The drug evidence also has a "temporal [and] spatial connection" to the felon-in-possession charge. *Hardy*, 228 F.3d at 748. The United States contends that Smith fled from Trooper Boyer while carrying a backpack. (Doc. No. 25, at 2.) Soon after the chase, police discovered a backpack in a nearby backyard. (*Id.*) Inside was the firearm specified in the indictment (*id.* at 2; *see* Doc. No. 10, at 1), along with 3.7219 grams of fentanyl, 26.9387 grams of a white powder substance that did not test positive for a controlled substance, 3.6956 grams of MDMA, two digital scales, and Smith's photo identification. (Doc. No. 25, at 2, 6.) Courts have found similar temporal and spatial connections sufficient to admit *res gestae* evidence in felon-in-possession cases. *See, e.g.*, *Rhodes*, 314 F. App'x at 793 (finding a "spatial and temporal connection" between drugs, drug paraphernalia, and ammunition found in the same house); *Shanklin*, 2017 WL 1424302, at *2 (similar).

Moreover, the drug and other evidence helps to "complete the story of the charged offense" as it "arises from the same event[]" as the felon-in-possession charge. *Hardy*, 228 F.3d at 748. Under the United States' theory of the case, the drugs (at least in part) explain why Smith ran from the police in the first place. *See, e.g.*, *United States v. Long*, No. 1:23-cr-635, 2024 WL 3872844, at *2 (N.D. Ohio Aug. 19, 2024) (finding "marijuana, sandwich bags and a digital scale" to be proper *res gestae* evidence in felon-in-possession case because the evidence arose "from the same events as the charged offense and complete[d] the story of the charged offense"). Additionally, the government argues that the "drug possession can assist in proving motive for firearm possession." (Doc. No. 25, at 6.) *See Till*, 434 F.3d at 883 (admitting drug evidence as *res gestate* because it helped to "prove motive for firearm possession").

For all of those reasons, the drug evidence is admissible as *res gestae* evidence and Rule 404(b) is inapplicable.

B.    **Rule 403 Balancing**

*Res gestae* evidence may still be inadmissible "if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Fed. R. Evid. 403; *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015). Evidence is unfairly prejudicial only if it "has an 'undue tendency to suggest decision on an improper basis.'" *United States v. Smith*, 70 F.4th 348, 353 (6th Cir. 2023) (quoting *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) (further citation omitted)). A defendant is not unfairly prejudiced, for example, if their case is damaged by "the legitimate probative force of the evidence." *Id.* (citation and quotation marks omitted).

Here, the drug evidence is admissible under Rule 403. As explained above, courts have repeatedly recognized a legitimate link between the possession of drugs and the possession of firearms. If the United States can prove that Smith possessed the drugs in the backpack, a jury could properly rely on that evidence to determine that Smith possessed the gun. *See, e.g.*, *Till*, 434 F.3d at 884; *Shanklin*, 2017 WL 1424302, at *4.

The Court acknowledges that the drug evidence may result in some slight prejudice to Smith. *United States v. Whitlow*, --- F.4th ----, 2025 WL 1122357, at *7 (6th Cir. April 16, 2025) ("[E]very piece of the government's evidence prejudiced [the defendant] in some way—that's why the government introduced it."). Rule 403 asks only whether the drug evidence will unfairly prejudice Smith and, if so, whether the risk of such prejudice substantially outweighs the probative value of the drug evidence. *Id.* Because there is a proper inference to be drawn from the drugs that goes directly to whether Smith possessed a gun, any prejudice "results from the legitimate probative force of the evidence" and is not inherently unfair. *Smith*, 70 F.4th at 353 (citation and quotation marks omitted). Other courts have arrived at the same conclusion. *See, e.g.*, *Long*, 2024 WL

3872844, at *2 ("[U]ncharged possession evidence could not be said to be substantially outweighed by the potential for unfair prejudice."); *Shanklin*, 2017 WL 1424302, at *4 ("[Defendant] has not argued, and the Court does not find, that evidence related to the marijuana operation would suggest a decision on an *improper* basis." (emphasis in original)). Perhaps the United States could make its case without introducing evidence of the drugs, but it does not have to. *Till,* 434 F.3d at 883 (rejecting defendant's argument that drug evidence should be excluded because "narrative of the firearm seizure could readily have been told without mentioning [the drugs]"). The drug evidence need not be excluded under Rule 403.[3]

### III. CONCLUSION

The drug evidence found in the backpack is proper *res gestae* evidence that does not implicate Rule 404(b) and does not warrant exclusion under Rule 403. Accordingly, Smith's motion *in limine* (Doc. No. 21) is **DENIED**.

**IT IS SO ORDERED**.

Dated: April 21, 2025

                                                          **HONORABLE SARA LIOI**
                                                          **CHIEF JUDGE**
                                                          **UNITED STATES DISTRICT COURT**

---

[3] In his reply, Smith cites generally to *United States v. Hansbro*, No. 1:18-cr-175 (N.D. Ohio, filed 3/27/2018) in support of his argument that the drug evidence ought to be excluded under Rule 403. (Doc. No. 26, at 2.) Smith contends that the court in *Hansbro* grappled with "this precise issue" and urges the Court to "follow the decision of the *Hansbro* Court and find that the introduction of this evidence would be far more prejudicial to [Smith] than probative." (*Id.*) Smith did not provide a specific citation to the decision, and the Court has been unable to locate the ruling in *Hansbro*.